SULLIVAN BROTHERS, INC., a Wisconsin corporation, Plaintiff-Respondent,

v.

STATE BANK OF UNION GROVE, a Wisconsin banking corporation, Defendant-Appellant,†

NIELSEN IRON WORKS, INC., Defendant-Respondent,

RUUD ELECTRIC COMPANY, INC., John Weiss, d/b/a North Cape Heating Company, a Wisconsin corporation; Milwaukee Insulation, Inc.; Cudahy Roofing & Supply Company, Inc., a Wisconsin corporation; Kenosha Materials, Inc., a Wisconsin corporation; Jim Michel Building Specialties, Inc., a Wisconsin corporation; and Arkay Tile, Inc., a Wisconsin corporation, Defendants-Respondents,

TEWS LIME & CEMENT COMPANY, a Wisconsin corporation; Union Grove Lumber & Fuel Company, a Wisconsin corporation; and Chris W. Ludwig, d/b/a Ludwig Plumbing & Heating, Defendants,

DU MOR GENERAL CONTRACTORS, INC., a Wisconsin corporation, Intervening Defendant-Appellant.†

Court of Appeals

*No. 81–1248. Submitted on briefs February 3, 1982.—Decided May 19, 1982.*
(Also reported in 321 N.W.2d 545.)

† Petition to review denied. HEFFERNAN and CECI, JJ., took no part.

For the defendant-appellant and the intervening defendant-appellant the cause was submitted on the brief of *Harrison W. Nichols* of Union Grove and *R. Arthur Ludwig* of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Edward J. Bruner, Jr.* of *Heft, Dye, Heft & Paulson* of Racine; *Dennis R. Boyle* of Burlington; *Robert L. Mann* of *Kohner, Mann & Kailas, S.C.* of Milwaukee; *Constantine, Christensen, Krohn & Kerscher, S.C.* of Racine; *Jesse A. Wesolowski* of *Fleming & Associates, S.C.* of Milwaukee, and *Harry W. Theuerkauf* of Milwaukee.

Before Voss, P.J., Brown and Scott, JJ.

VOSS, P.J.   This case concerns the interpretation of sec. 779.02 (1) (c), Stats., dealing with the notice that lien claimants must give to preserve their rights. At issue are three questions: (1) whether sec. 779.02 (1) (c), Stats., applies to both remodeling and new construction; (2) whether the term "usable square feet of floor space" includes such things as interior and exterior walls, stair-

wells, columns and exterior canopied areas, and (3) whether the construction contract considered here involved more than 10,000 usable square feet of floor space. We hold that sec. 779.02(1)(c), Stats., does apply to both remodeling and new construction. The term "usable square feet of floor space" includes space occupied by interior walls, stairwells and columns but does not include exterior walls and exterior canopied areas. Finally, we hold the construction considered involved more than 10,000 usable square feet of floor space. For those reasons, this court affirms the judgment of the trial court.

On September 8, 1978, the State Bank of Union Grove entered into a contract with Du Mor General Contractors, Inc., for both construction of an addition to its bank building and remodeling of the first floor of its existing structure. Du Mor entered into contracts with a series of subcontractors to provide material and labor for the construction project.

The addition had a basement and first floor. Each had a gross exterior dimension of fifty-three feet by sixty-eight feet. Together, the two floors had 7,208 total square feet of floor space. The gross exterior dimensions of the first floor of the existing building were fifty-five feet by sixty-eight feet, with a projection to the west of five by thirty-one. The first floor had 3,895 square feet of floor space. Together, the remodeling of the three floors involved 11,103 square feet of floor area.

The record also indicates that work was done in the basement of the existing structure. The work done in the basement was pursuant to an agreement between Du Mor General Contractors and Ruud Electric signed March 20, 1979. According to Gordon Cabush, the project manager for Ruud Electric, the agreement was merely an amendment to the October 5, 1978 contract entered into between Du Mor and Ruud. The basement's dimen-

sions were identical to the first floor dimensions. It measured 3,895 square feet. [1]

In its memorandum decision, the trial court ruled that the contract involved more than 10,000 usable square feet of floor space. On the basis of that finding, it ruled that the lien claimants qualified for the exception to the notice of lien rights requirement in sec. 779.02(1)(c), Stats. [2] Consequently, the lien claims were valid, and

---

[1] The parties to this action dispute whether or not the work done in the basement of the existing structure should be considered part of the work done under the original contract. The trial court ruled that this was all one contract with oral modifications. We conclude the remodeling of the first floor of the existing structure, combined with the construction of the addition, involves more than 10,000 usable square feet of floor space. Therefore, we reach no conclusion whether the work done in the basement was work contemplated in the original contract.

[2] In order for a subcontractor to perfect rights as a lien claimant under sec. 779.02(2)(b), Stats., he must:

within 60 days after furnishing the first labor or materials the person gives notice in writing, in 2 signed copies, to the owner either by personal service on the owner or authorized agent or by registered mail with return receipt requested to the owner or authorized agent at the last-known post-office address. The owner or agent shall provide a copy of the notice received, within 10 days after receipt, to any mortgage lender who is furnishing or is to furnish funds for construction of the improvement to which the notice relates.

Section 779.02(1)(c), Stats., creates an exception to this notice requirement. It declares:

(1) The notice required to be given by lien claimants under sub. (2) shall not be required to be given in the following cases only:

. . .

(c) By any lien claimant furnishing labor or materials for an improvement in any case where more than 4 family living units are to be provided or added by such work of improvement, if the improvement is wholly residential in character, or in any case where more than 10,000 total usable square feet of floor space is to be provided or added by such work of improvement, if the improvement is partly or wholly nonresidential in character.

each lien claimant was entitled to judgment for his requested amount. The trial court entered judgment on May 11, 1981. Du Mor and the State Bank appeal from that judgment.

### APPLICATION OF SEC. 779.02(1)(c), STATS.

Du Mor and the State Bank first argue that sec. 779.02 (1)(c), Stats., only applies to new construction and not to remodeling. They contend that the legislative history of the statute and a Minnesota case interpreting a similar statute indicate that the statute must be interpreted in such a manner. We do not agree.

Section 779.02(1)(c), Stats., provides an exception from the lien notice requirement mandated by sec. 779.02 (2)(b), Stats. The language of the statute declares that the exception is to apply to "any lien claimant furnishing labor or materials for an improvement. . . ." The central issue, then, is whether remodeling is considered to be an improvement.

The term "improvement" is defined in sec. 779.01(2) (c), Stats., which declares:

(c) "Improve" or "improvement" includes any building, structure, erection, fixture, demolition, *alteration,* excavation, filling, grading, tiling, planting, clearing or landscaping which is built, erected, *made or done* on or to land for its permanent benefit. *This enumeration is intended as an extension rather than a limitation of the normal meaning and scope of "improve" and "improvement."* [Emphasis added.]

The language of the statute indicates that the term "improvement" is intended to cover alterations that are made. This quite clearly extends to remodeling. This is clear from the first sentence of subsection (c). The last sentence of the subsection indicates that an expansive interpretation of the first sentence is intended. This leaves no doubt that the term "improvement" is intended to include remodeling.

Appellants argue that the words "provided" or "added" as used in sec. 779.02(1)(c), Stats., must be defined in order to understand the meaning of the term "improvement." Where a word or phrase is specifically defined in a statute, its meaning is as defined in the statute, and no other rule of statutory construction need be applied. It is only when a word or phrase is used in a statute and is not specifically defined in it that common and approved usage of such a word or phrase and other accepted rules of statutory construction apply. *Fredricks v. Industrial Commission,* 4 Wis. 2d 519, 522, 91 N.W.2d 93, 95 (1958).

Additionally, other sections of the lien statute indicate that the word "improvement" comprehends more than new construction. Section 779.01(4), Stats., declares:

When *new construction is the principal improvement* involved, commencement is deemed to occur no earlier than the beginning of substantial excavation for the foundations, footings or base of the new construction, except where the new construction is to be added to a substantial existing structure, in which case the commencement is the time of the beginning of substantial excavation or the time of the beginning of substantial preparation of the existing structure to receive the added new construction, whichever is earlier. [Emphasis added.]

The statutory language indicates that one form of improvement may be new construction. The obvious implication is that other forms of improvements exist which are not new construction. Therefore, we hold that the term "improvement" also applies to remodeling.

## DEFINITION OF USABLE SQUARE FEET

Second, appellants argue that the improvements made at the bank do not involve more than 10,000 usable square feet of floor space. Appellants contend that because the improvements do not involve more than 10,000 usable

square feet of floor space, the subcontractors were required to give notice of their liens to the State Bank. Such an argument is premised on the supposition that usable square feet of floor space must be defined to exclude areas covered by interior and exterior walls, stairwells, columns, piers, built-in cabinets and duct work. Appellants contend that usable square feet of floor space is space which is not devoted for some fixed purpose. Rather, it must be capable of being walked on, stood upon or otherwise available for use. We find no support for such an argument.

Although sec. 779.02(1)(c), Stats., uses the term "usable square feet of floor space," the term is not defined in ch. 779, the chapter dealing with liens. The term is not defined anywhere in the Wisconsin Statutes or in Wisconsin case law. Although the term or an equivalent term is used in the statutes of other states, it is undefined by those states.

The legislative history of the statute provides clues regarding the intended meaning of the term. The notes of the legislative council indicate that the 10,000 square feet standard was a substitution for a dollar amount. The reason for the substitution was the realization that the dollar standard has built-in obsolescence. W. Raushenbush, *Fifth Memorandum to the Insurance and Banking Committee,* January 12, 1967. The clear intent of the committee was to have size be a substitute for value in determining when notice of lien should be required.

Also, the Legislative Council Note (1967) to sec. 779.02 (1)(c), Stats., discusses the purpose of the lien notice requirement and indicates why notice is not necessary in some instances. It explains:

The purpose is to work toward earlier and more realistic notice on those smaller jobs where the owner may be inexperienced, unaware of the construction lien laws, and hence in possible danger of having to pay twice or lose

his property. On larger construction, such unawareness will not be a factor, and lenders and owners can set up their own machinery for ascertaining who the potential lien claimants are.

Again, the size of the building is the only factor used to determine when notice is needed.[3]

Although the term "usable square feet of floor space" is not defined by Wisconsin law, a very similar term appears in the Wisconsin Administrative Code. Section Ind. 51.01(5), defines the term "net area" by using the term "usable floor area." It states that net area is "[t]he occupied or *usable floor area* in a building *but not including* space occupied by columns, walls, partitions, mechanical shafts or ducts." (Emphasis added.) By stating that "net area" equals the "usable floor area" less columns, walls, partitions, mechanical shafts or ducts, the administrative code indicates that "usable floor area" includes columns, walls, partitions, and mechanical shafts or ducts. Such items could not be subtracted from "usable floor area" if they were not part of "usable floor area" in the first instance. We believe the term "usable floor area" as defined in the administrative code is sufficiently similar to the term "usable square feet of floor space" to provide guidance in defining it.

---

[3] Sullivan also argues that the canopied area attached to the bank should also be included in computing the usable square feet of floor space. We do not agree. Wisconsin Administrative Code section Ind. 51.01(56a) defines the term "floor" as "[t]he bottom or lower part of an enclosed space including any portions raised or depressed by not more than 3 feet from the designated principal level where the raised or depressed portion is treated architecturally as a part of the same principal level." We do not view a canopied area to be "enclosed space." Because a floor is the "bottom or lower part of enclosed space," we hold the canopied area has no area to be included in determining the "usable square feet of floor space."

Because of the context in which it is used, we do not believe the legislature intended to create an overly complicated meaning for the term "usable square feet of floor space." Floor space may have a "use" when any structure, permanent, semipermanent, or temporary, is placed on it. Consequently, we believe the legislature did not intend that the floor space beneath columns, walls, stairs or partitions should be deducted to arrive at the usable square feet of floor space. The term "usable square feet of floor space" includes all of the floor area within the inside surface of the outside walls.

Appellants argue that such a definition would render the word "usable" in the phrase "usable square feet of floor space" meaningless. They argue this because they feel such a definition would mean that there is no unusable square feet of floor space. However, the attic or crawl space to a building has a floor, but we would not consider this to be *usable* square feet of floor space within the meaning of the statute. Therefore, the term "usable" in the phrase "usable square feet of floor space" does have a purpose.

## NUMBER OF USABLE SQUARE FEET

The trial court found that the construction contained over 10,000 square feet. We agree based on the following formula. The first floor of the existing structure plus the basement and first floor of the addition, as indicated by the testimony of both expert witnesses, has 11,103 square feet of floor space within the outer surface of its outside walls. This is the building's gross area. The new construction was an addition adjoined to the existing structure. Together, the existing structure and the new construction created a single building with exterior dimensions of 108 feet by 68 feet. Subtracting the number

of total square feet in the outside wall from the gross area gives the usable square feet of floor space.

The architectural drawings indicate that the structure's exterior wall was one foot thick except around the vault where it was one and one-half feet thick. This means that 549 square feet[4] must be subtracted from the gross area to give the usable square feet of floor space. Under our calculations, the building has 10,554 usable square feet of floor space. Accordingly, we affirm the finding of fact of the trial court that the improvements involved more than 10,000 usable square feet of floor space.

*By the Court.*—Judgment affirmed.

---

[4] This calculation was reached in the following way. The north and south exterior walls of the first floor of the entire structure each contain 108 square feet. Together, they reduce the gross area by 216 square feet. The east and west exterior walls of the first floor of the entire structure each contain 66 square feet of floor space. Together, they reduce the gross area by 132 square feet. The wall around the vault is an extra one-half foot thick. This reduces the gross area by an additional 17 square feet. The exterior wall projection of the western wall of the old first floor reduces the gross area by an additional 12 square feet. In total, the exterior walls around the first floor contain 377 square feet. The north and south exterior walls of the basement floor of the addition each contain 53 square feet. Together, they reduce the gross area by 106 square feet. The east exterior wall of the basement on the addition contains 66 square feet. In total, the exterior walls around the basement floor contain 172 square feet. The exterior walls reduce the gross area by 549 square feet.