REPUBLIC AIRLINES, INC., Petitioner-Appellant-
Cross Respondent,

v.

Wisconsin DEPARTMENT OF REVENUE,
Respondent-Cross Appellant.

Court of Appeals

*No. 90–1008. Submitted on briefs October 2, 1990.—Decided
November 20, 1990.*

(Also reported in 464 N.W.2d 62.)

For the petitioner-appellant cross respondent the cause was submitted on the briefs of *Timothy C. Frautschi, Jon P. Christiansen,* and *Wayman C. Lawrence* of Foley & Lardner, of Milwaukee.

For the respondent-cross appellant the cause was submitted on the briefs of *Donald J. Hanaway,* attorney

general, with *Alan Lee*, assistant attorney general, of Madison.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J.   Between 1981 and 1984, Republic Airlines, Inc. (Republic) sold liquor and provided complimentary food, soft drinks, peanuts, and occasionally liquor, to its overflight passengers. Overflights are flights that neither take off from or land in Wisconsin, but fly over the state. Because we conclude that the statutes and administrative rule then extant did not provide for a sales tax on sale of liquor or use tax on complimentary food and beverages, we reverse that part of the trial court's judgment upholding the assessment of the Wisconsin Department of Revenue (DOR). We affirm the judgment as it sustained the Wisconsin Tax Appeals Commission's (WTAC) determination that the complimentary peanuts were exempt from use tax.

Republic formerly reported gross receipts on food, beverages, and peanuts based on a ratio of revenue passenger miles (RPM) flown in Wisconsin (the numerator), to its RPMs everywhere (the denominator). The numerator included flights that landed in or took off from Wisconsin, but did not include overflights. DOR adjusted the numerator of this fraction upward to include overflights. Thence, this litigation.[2]

Republic appeals from a judgment which affirmed a WTAC order denying Republic's petition for redetermination of DOR's $68,769.58 plus interest deficiency assessment. Sections 77.52(1) and 77.53(1), Stats. The assessment arose from Republic's failure to pay taxes on liquor it sold, and on food, peanuts, and occasionally

---

[2]The legality of the apportionment formula itself is not otherwise an issue in this appeal.

liquor it gratuitously provided to overflight passengers. WTAC made its determination upon stipulated facts.

DOR cross-appeals that part of the judgment that affirmed WTAC's assumption of jurisdiction and determination of exemption over the issue of use taxation of Republic's complimentary peanuts served to its passengers.[3]

In its decision and order, WTAC succinctly set forth the issue before it and now before us:

> Whether during the period 1981 through 1984, Republic's sales of liquor and use of liquor, pop, and peanuts on flights which fly over Wisconsin that don't land or take off in Wisconsin, and fly over Wisconsin's portion of Lake Michigan, are "in this state" within the meaning of secs. 77.52(1) and 77.53(1), Stats.

Our review addresses DOR's findings and decision, not those of the trial court. *See Keeler v. LIRC,* 154 Wis. 2d 626, 632, 453 N.W.2d 902, 904 (Ct. App. 1990). Application of a statute to stipulated facts presents a legal issue for which we accord no weight to the conclusion of DOR. *Drivers, Salesmen, Warehousemen, Milk Processors, Cannery, Dairy Employees and Helpers Local No. 695 v. LIRC,* 154 Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990). DOR argues in its brief, incorrectly we believe, that the issue is one of statutory construction. The statutes under consideration are not ambiguous or inconsistent. The parties do not claim that they are. We con-

---

[3]WTAC voted three to two to uphold the assessment. It also upheld the constitutionality of Wisconsin's sales and use tax as it applies to overflights. Four members upheld exemption of complimentary snacks and peanuts. We reverse the assessment and affirm the exemption. We do not reach the constitutional issues.

clude that they require no construction. Their application to the facts merely requires us, straightaway, to carry out the manifest intent of the legislature.[4]

The parties' arguments center upon whether the words "in this state" found in secs. 77.52(1) and 77.53(1), Stats. (1983–84)[5] include airspace above the ground. These statutes provided:

> **77.52 Imposition of retail sales tax. (1)** For the privilege of selling, leasing or renting tangible personal property, including accessories, components, attachments, parts, supplies and materials, at retail a tax is imposed upon all retailers at the rate of 5% of the gross receipts from the sale, lease or rental of tangible personal property, including accessories, components, attachments, parts, supplies and materials, sold, leased or rented at retail *in this state.*

> **77.53 Imposition of use tax. (1)** An excise tax is hereby levied and imposed on the storage, use or other consumption *in this state* of tangible personal property or taxable services described in s. 77.52 purchased from any retailer at the rate of 5% of the sales price of the property or taxable services. [Emphasis added.]

---

[4]Several arguments based on the U.S. Constitution are raised and briefed by the parties. A decision on these issues is unnecessary to the resolution of this case. Sufficient nonconstitutional grounds exist to support our decision. *See Grogan v. Public Serv. Comm'n,* 109 Wis. 2d 75, 77, 325 N.W.2d 82, 83 (Ct. App. 1982); *Northwest Airlines, Inc. v. State Tax Appeal Bd.,* 720 P.2d 676, 678 (Mont. 1986).

[5]References to the statutes in this opinion pertain to the 1981–82 and 1983–84 statutes. Sections 77.52(1) and 77.53(1) were similar during those years except for a change in the tax rate set forth in the 1981–82 version. These amendments are immaterial to the issues on appeal.

Section 77.51(6), Stats., defines the term "in this state" or "in the state" to mean "within the exterior limits of the state of Wisconsin." When words are defined by statute, we look nowhere else for their meaning and apply only the legislature's definition. *Sullivan Bros. v. State Bank of Union Grove,* 107 Wis. 2d 641, 646, 321 N.W.2d. 545, 547 (Ct. App. 1982). Section 77.51(6) refers to exterior limits and contains no reference whatsoever to airspace.

The legislature presumptively was aware of the provisions of the Wisconsin Constitution when it enacted the sales and use tax. Wisconsin's Constitution, art. II, sec. 1 defines the exterior limits of the state as its "boundaries," without reference to airspace. Section 1.01, Stats. (1983–84), complements the constitution and states:

> **1.01 State sovereignty and jurisdiction.** The sovereignty and jurisdiction of this state extend to all places within the boundaries declared in article II of the constitution, subject only to such rights of jurisdiction as have been or shall be acquired by the United States over any places therein; and the governor, and all subordinate officers of the state, shall maintain and defend its sovereignty and jurisdiction. Such sovereignty and jurisdiction are asserted and exercised over the St. Croix river from the eastern shore thereof to the center or thread of the same, and the exclusive jurisdiction of the state of Minnesota to authorize any person to obstruct the navigation of said river east of the center or thread thereof, or to enter upon the same and build piers, booms or other fixtures, or to occupy any part of said river east of the center or thread thereof for the purpose of sorting or holding logs, is denied; such acts can only be author-

253

ized by the concurrent consent of the legislature of this state.

This statute is silent on the question of airspace sovereignty.

That the federal government has assumed jurisdiction of airspace is evident from 49 U.S.C. 1508(a), which provides in part: "The United States of America is hereby declared to possess and exercise complete and exclusive national sovereignty in the airspace of the United States . . .." A reading of these unambiguous statutes and the constitution can lead to no conclusion other than that the sales and use tax statutes as written from 1981 to 1984 vest no authority in DOR to assess a tax for overflight transactions.

A majority of the WTAC determined and DOR argues on appeal that sec. 114.02, Stats. (1983–84), provided it with authority to assess this tax on overflights. The statute stated:

> **Section 114.02 Sky sovereignty.** Sovereignty in the space above the lands and waters of the state is declared to rest *in the state*, except where granted to and assumed by the United States. [Emphasis added.]

DOR does not assert ambiguity in or inconsistency between the tax statutes and Chapter 114, Stats. Rather, it argues that these statutes indicate how the words "in this state" found in the tax statutes and in sec. 114.02, Stats., should be interpreted. DOR invites us to equate the words "in this state" found in the tax statutes with the word "sovereignty" found in sec. 114.02.

In rejecting DOR's invitation, we first note that the definition of the phrase "in this state" in sec. 77.51(6), Stats., is expressly exclusive of Chapter 114. The preface

254

to sec. 77.51 states that its definitions govern construction of terms "in this subchapter." Section 77.51, Stats. The subchapter is entitled General Sales and Use Tax. We decline to equate sec. 77.51(6)'s definition of "in this state" to the words "sovereignty" and "in the state" found in sec. 114.02, Stats.

Chapter 114, Stats., regulates aeronautics. In that context, sec. 114.02 defines sky sovereignty and embraces subsequent provisions. Section 114.03 defines landowner's sky rights; sec. 114.07 provides that in flight, "crimes, torts and other wrongs" will be governed by Wisconsin law; and sec. 114.08 provides that "all contractual and other legal relations entered into" during flight "have the same effect as if entered into on the land or water" below. No similar provision is made for sale or use taxes. We do not say that a carefully worded statute could not impose these taxes, but it is clear that failure to do so displays a legislative purpose not to do so.[6] If we accept DOR's argument that sec. 114.02 reaches into the tax statutes and automatically thrusts them into the realm of aeronautics, then secs. 114.07 and 114.08 become surplusage. Logically, sec. 114.02 would automatically apply state criminal and contractual jurisprudence to overflights. However, we are bound not to interpret a statute in a manner which casts a pall of superfluity over other statutes. *State ex rel. Smith v. City of Oak Creek,* 139 Wis. 2d 788, 796, 407 N.W.2d 901, 905 (1987).[7]

---

[6]Sections 77.52(1) and 77.53(1), Stats., are taxing statutes. A tax may not be imposed without clear and express language for that purpose. *Kollasch v. Adamany,* 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51 (1981).

[7]*See also Northwest Airlines,* 720 P.2d at 678. A corporation license tax case, the Montana court held, *inter alia,* that its Reve-

DOR argues that the Wis. Adm. Code sec. Tax 11.87(2)(j) (1987) (hereinafter, the Rule)[8] is consistent with and carries out the intent of secs. 114.02, 114.07, and 114.08, Stats. As stated, sec. 114.02 does not impose the tax statutes on overflights and hence, cannot constitute a foundation stone for the Rule.

Without citation to authority, DOR argues that the legislature acquiesced to the Rule and thereby breathed the force of law into it. DOR asserts that because the Rule has been in effect since 1979 and because the legislature has subsequently amended secs. 77.52 and 77.53, Stats., without redefining the phrase "in this state," it has acquiesced. This argument fails for two reasons. First, DOR makes no showing that the subsequent amendments adopted the Rule, expressly or by implication. *See Helvering v. Reynolds,* 313 U.S. 428, 432 (1941). DOR has not developed *its* argument and this court will not, *sua sponte,* research the question whether the legislature adopted the Rule by subsequent legislation. *See* sec. 809.19(1)(e), Stats. Secondly, the doctrine of legislative reenactment is a tool of statutory construction. *See Helvering,* 313 U.S. at 432. Because the statutes involved here are unambiguous and consistent, resort to construction is inappropriate. *See, e.g., Grace Episcopal Church v. City of Madison,* 129 Wis. 2d 331, 336, 385 N.W.2d 200, 203 (Ct. App. 1986).

nue Department had no authority to include overflight miles under a statute which imposed the tax for business carried on "in this state."

[8]The Rule provides: "The sales of meals and liquor by transportation companies (e.g., airlines or railways) to a customer while operating in *or over* Wisconsin for a specific charge shall be taxable." (Emphasis added.)

The tax statutes clearly refer to transactions *in* this state; the Rule extends this power to include transactions *over* Wisconsin. An administrative rule, even of long duration, may not supersede an unambiguous statute. *Basic Prods. Corp. v. Wisconsin Dept. of Taxation,* 19 Wis. 2d 183, 186, 120 N.W.2d 161, 162 (1963). The preposition *in* is simply not the same as the preposition *over.*

In its cross-appeal, DOR challenges WTAC's jurisdiction to determine a use tax exemption for complimentary peanuts given to overflight passengers. Whether an agency has jurisdiction to act presents a legal issue that we review *ab initio. Board of Regents v. Wisconsin Personnel Comm'n,* 103 Wis. 2d 545, 551, 309 N.W.2d 366, 369 (Ct. App. 1981). An agency's decision determining the scope of its own authority is not binding upon a reviewing court. *Id.* In deciding this issue of law, we owe no deference to the conclusions of the trial court. *See Trinwith v. LIRC,* 149 Wis. 2d 634, 641, 439 N.W.2d 581, 584 (Ct. App. 1989).

DOR argues that WTAC "gratuitously" decided that the peanuts were exempt because WTAC's jurisdiction was limited to issues raised in Republic's petition for redetermination addressed to DOR. However, the record contains Republic's petition for redetermination, dated January 9, 1986, which specifically objects, *inter alia,* to DOR's assessment for the peanuts. As previously stated, DOR's notice of the use tax deficiency determination included the peanuts, as did its denial of Republic's petition for redetermination. Moreover, the parties' joint fact stipulation filed with WTAC specifically raised the question of the peanut assessment adjustment. The peanut issue was squarely raised.

257

Moreover, in *Nelson Brothers Furniture v. Wisconsin Department of Revenue,* 152 Wis. 2d 746, 449 N.W.2d 328 (Ct. App. 1989), a franchise tax case, we decided that even if an issue was not raised in the aggrieved taxpayer's petition for redetermination, it could be presented to the WTAC. We said:

> Under sec. 73.01(4)(a), Stats. (1985–86), the commission is "the final authority for the hearing and determination of all questions of law and fact arising under [the tax code]." The statutory procedures for appealing department decisions do not specify the contents of the appeal documents, and nothing in the statutes suggests that the review must be strictly confined to the claims raised before the department.[9]

*Id.* at 764–65, 449 N.W.2d at 335 [brackets in original].

In any event, we conclude that when Republic filed its petition for review which specifically included the peanut assessment issue, WTAC became vested with jurisdiction to decide it.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.

FINE, J. *(concurring).* I agree with the majority that the Wisconsin legislature did not authorize the state to tax the sale and consumption of beverages on overflights, and that the Tax Appeals Commission properly decided the use-tax exemption issue. I write separately

---

[9]Section 73.01(4)(a), Stats. (1983–84), specifically references sub. (5). Subsection (5) includes, *inter alia,* any person who has filed a petition for redetermination with the DOR and who is aggrieved by the redetermination. The 1981–82 statute is essentially the same.

because I believe the majority's skirting references to the Wisconsin Constitution and to federal preemption unnecessarily flirt with the issue of whether the legislature *could have* authorized such taxation, which is a highly complex issue that we need not decide. This case merely requires us to apply the applicable statutes as they are written.

Section 77.52, Stats., imposes a retail sales tax on "the sale . . . of tangible personal property [that is] sold . . . at retail *in this state.*" (Emphasis added.) Section 77.53, Stats., imposes an excise tax on the "use or other consumption *in this state* of tangible personal property . . .." (Emphasis added.) The phrase "in this state" is defined to mean "within the exterior limits of the state of Wisconsin." Section 77.51(6), Stats. The words the legislature has chosen to express its purpose are clear.[1] Thus, we may neither add to nor subtract from their meaning. *State v. Bruckner,* 151 Wis. 2d 833, 844–845, 447 N.W.2d 376, 381 (Ct. App. 1989). In a transparent effort to expand its taxing authority beyond that authorized by sections 77.52 and 77.53, however, the Department of Revenue promulgated Wis. Admin. Code sec. Tax 11.87(2)(j):

> The sale of meals and liquor by transportation companies (e.g., airlines or railways) to a customer while operating in *or over* Wisconsin for a specific charge shall be taxable.

(Emphasis added.) This attempt at "independent legislation" is void, *see Department of Revenue v. Howick,* 100

---

[1]As the majority points out, Chapter 114, Stats., which concerns aeronautics and the responsibilities of the Department of Transportation, has absolutely nothing to do with the state's authorization to tax the sale, use, or consumption of tangible personal property on overflights.

Wis. 2d 274, 280–281, 303 N.W.2d 381, 384 (1981), and cannot authorize the state to tax the sale and consumption of beverages on overflights when that is not permitted by statute, *see* sec. 227.10(2), Stats. ("No agency may promulgate a rule which conflicts with state law.").