WISCONSIN CITIZENS CONCERNED FOR CRANES AND DOVES, John Wieneke and Pat Fisher, Plaintiffs-Respondents,†

v.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES, Defendant-Appellant,

U.S. SPORTSMEN'S ALLIANCE FOUNDATION f/k/a Wildlife Legislative Fund of America, Defendant-Intervenor-Co-Appellant.

Court of Appeals

*No. 02–1166. Submitted on briefs December 9, 2002.—Decided March 27, 2003.*

2003 WI App 76

(Also reported in 661 N.W.2d 858.)

† Petition to review granted 6-12-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Philip Peterson*, assistant attorney general, and *James E. Doyle*, attorney general.

On behalf of the defendant-intervenor-co-appellant, the cause was submitted on the briefs of *Mark A. Cameli* and *Andrew W. Erlandson* of *Reinhart Boerner Van Deuren, S.C.*, Madison and *William P. Horn* and *Allison M. Ellis* of *Birch, Horton, Bittner and Cherot*, Washington, D.C.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *George B. Strother IV* of *Krekeler Strother, S.C.*, Madison.

Before Vergeront, P.J., Dykman and Deininger, JJ.

¶ 1. DEININGER, J. The Wisconsin Department of Natural Resources appeals a circuit court order which declared a department rule invalid and prohibited the department from "promulgating an administrative rule setting a hunting season for mourning doves in Wisconsin absent further legislative action authorizing it to do so." We agree with the department that the plain

language of WIS. STAT. § 29.014(1) (1999–2000)[1] autho-rizes it to establish seasons for the hunting of mourning doves. Accordingly, we reverse the appealed order.

## BACKGROUND

¶ 2. The Wisconsin Natural Resources Board in 2001 adopted WIS. ADMIN. CODE § NR 10.01(1)(h) which established an open season, as well as daily bag and possession limits, for mourning doves.[2] The Wisconsin Citizens Concerned for Cranes and Doves and two of its officers filed suit under WIS. STAT. § 227.40 seeking to have the rule declared invalid. The lead plaintiff de-scribes itself as "a public interest organization" with approximately 250 members statewide who have con-tributed money to further the purpose of, among other things, "promoting the protection" of cranes and doves. We will refer to the plaintiffs-respondents as the Con-cerned Citizens, or simply as the Citizens.

¶ 3. The circuit court concluded that the relevant provisions of WIS. STAT. ch. 29 were ambiguous regard-ing the department's authority to establish a hunting season for mourning doves, and that the legislature did not intend to grant that authority. Accordingly, the court granted injunctive and declaratory relief prohib-

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[2] The Natural Resources Board is not a party to this action. For convenience, and as the circuit court and the parties have done, we will refer in this opinion to the rule and authority at issue as the department's.

iting the department from promulgating a rule setting a hunting season for mourning doves. The department appeals.[3]

## ANALYSIS

¶ 4. A person who wishes to have an administrative rule declared invalid may bring "an action for declaratory judgment as to the validity of such rule" in the Dane County Circuit Court. WIS. STAT. § 227.40(1). "[T]he court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was promulgated without compliance with statutory rule-making procedures." Section 227.40(4)(a). The Concerned Citizens contend that WIS. STAT. ch. 29 does not permit the department to establish an open season on mourning doves. In other words, the Concerned Citizens claim, and the circuit court concluded, that WIS. ADMIN. CODE § NR 10.01(1)(h) is invalid because the rule exceeds the department's statutory authority. *See Seider v. O'Connell*, 2000 WI 76, ¶¶ 24, 28, 236 Wis. 2d 211, 612 N.W.2d 659.

---

[3] The U.S. Sportsmen's Alliance Foundation was permitted to intervene in the circuit court and it is a co-appellant in this appeal. Although we do not separately address the Foundation's arguments for reversal of the appealed order, our references to the department's arguments are intended to include many of the Foundation's arguments. The Foundation makes one argument that the department does not—that the circuit court erred in granting the Concerned Citizens relief from an order of dismissal for lack of standing. Because we reverse the appealed order on its merits, and because neither appellant argues on appeal that the Concerned Citizens in fact lack standing to bring this action, we do not address the circuit court's discretionary decision to grant relief from its original order on standing.

¶ 5. Our review is de novo, but in deciding this question of law, we may derive "benefit" from the experience and analysis of an administrative agency which the legislature has empowered to administer a law it has enacted. *Id.*, ¶¶ 25–27. Here, the department has obviously concluded that WIS. STAT. ch. 29 authorizes it to establish a hunting season for mourning doves. We nonetheless have a duty to independently determine whether that is the case. *Id.* The department's determination that it was empowered to promulgate the rule is thus *not* entitled to the deference we would accord if the question it had decided were one of fact, or one of law not going to the scope of its authority in promulgating the rule. *See League of Wisconsin Municipalities v. Department of Commerce,* 2002 WI App 137, ¶ 8, 256 Wis. 2d 183, 647 N.W.2d 301, *review denied,* 2002 WI 121, 257 Wis. 2d 117, 653 N.W.2d 889 (Wis. Sep. 26, 2002) (No. 01–1035).

¶ 6. Our task is to determine whether WIS. ADMIN. CODE § NR 10.01(1)(h) contradicts "either the language of [WIS. STAT. ch. 29] or legislative intent." *Seider,* 236 Wis. 2d 211, ¶ 72. If it conflicts with either, the rule "exceeds the [department]'s statutory authority, and must be invalidated." *Id.*, ¶ 73. Conversely, if we find no conflict with either the language of WIS. STAT. ch. 29 or the legislature's intent in enacting the provisions of that chapter, we must conclude that the rule is within the department's authority and valid. *League of Wisconsin Municipalities,* 256 Wis. 2d 183, ¶ 9. Put another way, we will invalidate the department's rule only if we are convinced that it contravenes statutory language or a clear expression of legislative intent, and the burden is on the Concerned Citizens to so convince us. *See id.*,

377

¶ 10. In our inquiry, the question of whether the department *should* establish a season for mourning doves plays no part, the only issue being whether it *could* do so.

¶ 7. As with all questions of statutory interpretation, our chief objective is to discern the intent of the legislature. *See Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25, 559 N.W.2d 563 (1997). We first look to the plain language of the statute to determine what the legislature intended. *See id.* If the language is ambiguous, we may turn to extrinsic aids such as the legislative history, scope, context and purpose of the statute to determine legislative intent. *See id.* In construing multiple statutes, we must harmonize them if possible, and read them together in a way that will give each full force and effect. *See City of Milwaukee v. Kilgore*, 193 Wis. 2d 168, 184, 532 N.W.2d 690 (1995).

¶ 8. The department asserts that its authority to establish a hunting season for mourning doves derives from WIS. STAT. § 29.014(1), which provides as follows:

> The department shall establish and maintain open and closed seasons for fish and game and any bag limits, size limits, rest days and conditions governing the taking of fish and game that will conserve the fish and game supply and ensure the citizens of this state continued opportunities for good fishing, hunting and trapping.

The term "game" is defined in WIS. STAT. § 29.001(33) to include "all varieties of wild mammals or birds." Because mourning doves are wild birds, the department contends they are plainly "game" under § 29.001(33), and thus among the species for which it may establish hunting seasons and related regulations under the

plain language of § 29.014(1). We agree with the department that if we were to look no further than the two subsections on which it relies, its authority to promulgate the rule in question would be plainly established, and this would be a very short opinion.

¶ 9. The Concerned Citizens contend, however, that our inquiry cannot end so quickly because other, arguably related provisions of Wis. Stat. ch. 29 create ambiguity as to whether mourning doves may be deemed "game" within the meaning of Wis. Stat. §§ 29.001(33) and 29.014(1). We agree with the Citizens that ambiguity "can be found in the words of the statutory provision itself, or by the words of the provision as they interact with and relate to other provisions in the statute and to other statutes." *State v. Sweat*, 208 Wis. 2d 409, 416, 561 N.W.2d 695 (1997). Thus, we must determine whether " 'reasonable minds could differ' " as to whether mourning doves are "game" subject to the department's statutory authority to establish hunting seasons. *See UFE Inc. v. LIRC*, 201 Wis. 2d 274, 283, 548 N.W.2d 57 (1996) (citation omitted). This is a question of law for our independent resolution, and the fact that the parties disagree does not demonstrate that ambiguity exists. *See National Amusement Co. v. DOR*, 41 Wis. 2d 261, 267, 163 N.W.2d 625 (1969). Rather, we must "look to the language of the statute itself to determine whether 'well-informed' persons" could be confused as to the legislature's intent. *Id*.

¶ 10. We therefore turn to the statutory provisions which the Concerned Citizens contend render the term "game" ambiguous as applied to the present facts. Wisconsin Stat. § 29.001, in addition to defining "game"

in the manner we have stated, also provides definitions for, among many other things, "game birds" and "non-game species":

(39) "Game birds" includes wild geese, brant, wild ducks, wild swan, rails, coots, gallinules, snipe, wood-cock, plovers, sandpipers, ruffed grouse, prairie chicken, sharp-tailed grouse, pheasants, Hungarian partridge, Chukar partridge, bobwhite, quail, crows and wild turkey.

. . . .

(60) "Nongame species" means any species of wild animal not classified as a game fish, game animal, game bird or fur-bearing animal.

Because mourning doves are not specified as a "game bird" in § 29.001(39), the Citizens maintain that these birds are thus a "nongame species" under § 29.001(60), and as such cannot be "game" subject to the department's authority to establish hunting seasons under Wis. Stat. § 29.014(1).

¶ 11. The department concedes that mourning doves are a "nongame species," but asserts, first, that this does not prevent them from also being "game," and second, that the presence of definitions for terms used in other sections addressing other legislative purposes does not render the term "game" as used in Wis. Stat. § 29.014(1) ambiguous. Moreover, in the department's view, another statute, Wis. Stat. § 29.039, which deals with "nongame species," provides an alternative source for its authority to establish seasons during which mourning doves may be hunted. The department asserts that its interpretation is the only reasonable one, and that it harmonizes §§ 29.014 and 29.039 as part of

a comprehensive scheme for regulating the taking of wild animals in Wisconsin. We agree with the department.

¶ 12. At first blush it seems incongruous to conclude that a given creature could be both "game" and a "nongame species." A reasonably well-informed person, however, would be aware that WIS. STAT. § 29.001 provides detailed definitions of terms employed in WIS. STAT. ch. 29, and that these statutory definitions are meant to supplant common or dictionary definitions of the defined terms. That well-informed person would then observe that the legislature chose to employ the defined term "game" when authorizing the department to establish open and closed seasons under WIS. STAT. § 29.014(1), instead of the (apparently) narrower defined terms "game animals" and "game birds." *See* § 29.001(36) and (39).

¶ 13. In order to adopt the Concerned Citizens' interpretation that a bird that is not a "game bird" cannot be "game," one would have to rewrite the legislative definition of "game" to read something like this: "'game' means all 'game birds' and 'game animals' and does not include any 'nongame species.'" But that is not how the legislature chose to define "game," defining it instead to include "all varieties of wild mammals or birds." WIS. STAT. § 29.001(33). We agree with the department that when the legislature goes to the trouble of defining a specific term, and then employs that term in a statute to which the definition applies, a reasonably well-informed person would (and a reviewing court should) apply the definition provided when interpreting the statute, without regard to other terms that are defined differently and used in other statutes

381

for other purposes.[4] *See Republic Airlines, Inc. v. DOR,* 159 Wis. 2d 247, 253, 464 N.W.2d 62 (Ct. App. 1990) ("When words are defined by statute, we look nowhere else for their meaning and apply only the legislature's definition."); *American Motorists Ins. Co. v. R&S Meats, Inc.,* 190 Wis. 2d 196, 214, 526 N.W.2d 791 (Ct. App. 1994) ("Where the legislature uses similar but different terms in a statute . . . we presume it intended those terms to have different, distinct meanings.").

¶ 14. We therefore conclude that the presence of definitions for "game birds," which the department concedes does not include mourning doves, and for "nongame species," which does include the doves, does not render the term "game" as used in WIS. STAT. § 29.014(1) ambiguous. The legislature has separately and specifically defined the term "game" to include "all varieties of wild mammals or birds." WIS. STAT. § 29.001(33). That definition plainly includes mourning doves, and it is that definition which we must apply in interpreting the scope of the department's authority under § 29.014(1).

¶ 15. Moreover, we note that WIS. STAT. § 29.001(39) does not say that "game birds" are limited to the enumerated species, but that the term "includes" those species. One might thus argue that the term "game birds" is open ended and could encompass mourning doves. The Concerned Citizens point out, however, that the statutory definition of "game birds" at one time included mourning doves by name, but the legislature removed mourning doves from the definition

---

[4] The terms "game birds" and "game animals" are employed in statutes relating to game farms, *see, e.g.,* WIS. STAT. § 29.867, and to the possession or transportation of game birds and animals, *see* WIS. STAT. §§ 29.354 and 29.364, but the terms are not found in WIS. STAT. § 29.014.

in 1971 when it designated the mourning dove as the Wisconsin state "symbol of peace." *See* WIS. STAT. § 1.10(3)(a); Laws of 1971, ch. 129. From this, the Citizens would have us conclude that the legislature does not want mourning doves to be hunted. We reject the argument, however, because if that is the result the legislature intended, it could easily have also removed mourning doves from the definition of "game," or enacted a separate prohibition against hunting the birds. Moreover, as the department points out, several other state symbols are "fair game" in Wisconsin. *See, e.g.,* § 1.10(3)(g) and (j) (designating the muskellunge the "state fish," and the white-tailed deer the "state wildlife animal").[5]

---

[5] The dissent relies heavily on the legislature's action in designating mourning doves as the state "symbol of peace" as an indication of its intent that the birds should not be hunted in Wisconsin. If that is its intent, the legislature could have prevented the promulgation of WIS. ADMIN. CODE § NR 10.01(1)(h). *See* WIS. STAT. § 227.19(5)(f). Although committees in both houses of the legislature conducted hearings on the rule, neither took action to prevent its promulgation. *See* § 227.19(4). Moreover, although several bills have been introduced since the promulgation of § NR 10.01(1)(h) to prohibit the department from authorizing an open season for the hunting of mourning doves, none have passed. *See* 2001 S.B. 45; 2001 A.B.190; 2001 A.B. 859. Thus, were it necessary for us to go beyond the plain language of WIS. STAT. ch 29 to ascertain the legislature's intent regarding the department's authority to establish an open season for hunting mourning doves, legislative history would provide support for the conclusion we reach. *See Mallo v. DOR,* 2002 WI 70, ¶¶ 30–31, 253 Wis. 2d 391, 645 N.W.2d 853 (Where a proposed rule gains significant media coverage, suggesting that the legislature could not ignore its existence, the failure of legislative committees to object to the rule is evidence that the legislature intended to grant the agency authority to promulgate the rule.).

¶ 16. In any event, even though some non-enumerated wild birds might be "game birds" within the facially open-ended definition of Wis. Stat. § 29.001(39), the department does not dispute that mourning doves are a "nongame species" under § 29.001(60), perhaps because of the legislature's action in 1971 to remove mourning doves from the statutory enumeration of "game birds." The department contends, however, that it could establish open and closed seasons for mourning doves by virtue of Wis. Stat. § 29.039(1), which provides as follows:

> The department may conduct investigations of nongame species to develop scientific information relating to population, distribution, habitat needs, and other biological data to determine necessary conservation measures. The department may develop conservation programs to ensure the perpetuation of nongame species. *The department* may require harvest information and *may establish limitations relating to taking, possession, transportation, processing and sale or offer for sale, of nongame species.*

(Emphasis added.) In the department's view, § 29.039(1) provides an alternate source of its authority to establish open and closed seasons and bag and possession limits for mourning doves. Again, we agree.

¶ 17. The Concerned Citizens claim, however, that although Wis. Stat. § 29.039(1) permits the department to regulate the "taking" of mourning doves, the statute does not authorize the department to establish seasons for "hunting" them, and in fact, prohibits the department from doing so. We conclude, however, that such an interpretation would require a strained reading of § 29.039, and it arguably leads to the unreasonable result that the department would be powerless to

·prevent mourning doves, which the Citizens seek to protect, from being hunted all year long.

¶ 18. The major premise of the Concerned Citizens' argument is that, even if "nongame species" are a subset of the broader term "game" (which, as we have noted, the Citizens dispute), because the former term is the more specific, Wis. Stat. § 29.039(1) and not Wis. Stat. § 29.014(1) governs what the department may and may not do regarding human interactions with mourning doves. And, in the Citizens' view, § 29.039 does *not* authorize the department to allow nongame species to be hunted because "hunting" is not mentioned in § 29.039. Rather, the statute refers only to the "taking" of nongame species.[6] Moreover, as the Citizens also point out, § 29.039 does not include authority to "establish and maintain open and closed seasons" as does § 29.014(1), further evincing what is in their view the legislature's intent that "nongame species," such as mourning doves, may not be hunted.

¶ 19. We reject the Concerned Citizens' restrictive interpretation of Wis. Stat. § 29.039(1). First, as we have discussed, we are not convinced that one need look further than Wis. Stat. § 29.014(1) to determine that the department may establish hunting seasons for mourning doves, because they are "game" within the meaning of that subsection. But, even if § 29.039 must be consulted to determine whether the legislature intended to restrict the authority granted in § 29.014 regarding any "game" that is also a "nongame species," we conclude that the plain language of § 29.039(1)

---

[6] "Taking" is not defined in Wis. Stat. ch. 29 but is listed among the activities which comprise "hunting" as defined in Wis. Stat. § 29.001(42): " 'Hunt' or 'hunting' includes shooting, shooting at, pursuing, taking, capturing or killing or attempting to capture or kill any wild animal."

permits the department to regulate when "nongame species" may be hunted. The department may under § 29.039(1) "establish limitations relating to taking" mourning doves. We conclude that this language plainly authorizes the department to confine the "taking" of mourning doves to certain days of the year. It simply makes no sense to say that persons who wish to "take" the doves during those days may not "shoot[] at" or "attempt[] to capture or kill" the birds, that is, "hunt" them. *See* WIS. STAT. § 29.001(42) (quoted in footnote 6).[7]

¶ 20. We therefore conclude that, by virtue of its authority under WIS. STAT. § 29.039(1), as well as its authority under WIS. STAT. § 29.014(1), the department may, as it has done in WIS. ADMIN. CODE § NR 10.01(1)(h), declare that mourning doves may be hunted only during September and October. To con-

---

[7] Additional evidence that the legislature did not intend the authority to regulate the "taking" of certain species to preclude "hunting" them is found in WIS. STAT. § 29.014(1). The Concerned Citizens do not dispute that § 29.014(1) authorizes the department to establish hunting seasons for some birds, but the statute does *not* expressly say that the "open and closed seasons" which the department may establish are "hunting" seasons. Immediately after the season setting authority, moreover, the statute authorizes the department to establish "conditions governing the *taking* of . . . game." *Id.* (emphasis added). It is only in the concluding words of the subsection that "hunting" is mentioned, as a part of the legislature's directive that seasons, bag limits and "conditions governing . . . taking" should be enacted in order to "ensure the citizens of this state continued opportunities for good fishing, hunting and trapping." *Id.* The undefined term "taking" as used in WIS. STAT. ch. 29 thus appears to include, not preclude, such activities as "fishing, hunting and trapping."

clude, as the Concerned Citizens would have us do, that the department lacks authority to set "open" seasons for mourning doves would suggest that the department could also not establish by rule a "closed season" for the birds. This in turn would mean that the hunting or taking of mourning doves could not be limited to a specified season at all under state law.[8] As the supreme court explained almost a century ago:

> [The State] may ordain closed seasons; it may prescribe the manner of taking, the times of taking, and the amount to be taken within a given time, as it may deem best for the purpose of preserving and perpetuating the general stock. *In the absence of legislation, the citizen may doubtless pursue, take, and dispose of fish and game as he sees fit, and without restraint,* so long as he violates no private rights; but when the state steps in and makes proper police regulations, the citizen takes his right of fishing or fowling hampered by such regulations; in other words, his right is the right which the state leaves to him, no more and no less.

*See State v. Nergaard,* 124 Wis. 414, 420, 102 N.W. 899 (1905) (emphasis added).

¶ 21. Moreover, any asserted ambiguity or conflict in the statutes at issue rapidly evaporates when WIS. STAT. ch. 29 is viewed as creating a comprehensive scheme for the "purposes of regulating the enjoyment, use, disposition, and conservation of [all] wild animals" within the state. WIS. STAT. § 29.011(1). To achieve

---

[8] The department notes, however, that federal law "limits the taking of migratory birds, including mourning doves," but many other "nongame species" would not have any protection from unlimited "open seasons" were it not for the department's authority under WIS. STAT. § 29.039 to place temporal restrictions on their taking.

these purposes, the legislature has granted rule-making authority to the department for a broad range of regulatory activities relating to wild animals. These activities range from the designation by the department of "endangered" and "threatened" species, which may be taken only under very limited circumstances as the department may permit, *see* WIS. STAT. § 29.604, to the establishment of open and closed seasons and such other "game" regulations as will "ensure the citizens of this state continued opportunities for good . . . hunting and trapping." WIS. STAT. § 29.014(1).[9]

¶ 22. Within this range, and as a complement to its other powers and responsibilities, is the department's authority under WIS. STAT. § 29.039 to study "nongame species" present in the state, to develop "conservation programs to ensure [their] perpetuation," and to "establish limitations relating to taking, possession [etc.] . . . of nongame species." Viewed in this way, § 29.039 provides additional authority to the department in furtherance of the overall legislative purposes.

---

[9] The dissent posits that we should have awaited the outcome of the vote on the proposed amendment to the Wisconsin Constitution that would incorporate a "right to . . . hunt, . . . subject only to reasonable restrictions as prescribed by law." Dissent at ¶ 25. Whether the state's constitution is amended in that manner has no bearing on the issue in this appeal, which is whether the department is authorized under present law to establish an open season for the hunting of mourning doves. Should the amendment pass, a citizen who believes the open season and restrictions promulgated in WIS. ADMIN. CODE § NR 10.01(1)(h) are unduly restrictive may be able to advance a constitutional argument regarding the "reasonableness" of the regulation, but the question of the rule's reasonableness is not at issue in this appeal.

The statute simply cannot be read as withdrawing from the department authority granted it elsewhere in Wis. Stat. ch. 29.

¶ 23. Finally, we note that the Concerned Citizens argue that "allowing the hunting of mourning doves is inconsistent with other" department rules. The Citizens point to the department's use of the term "wild animals" instead of "game" in the introduction to Wis. Admin. Code § NR 10.01. They are also critical of the fact that, although § NR 10.01(1) includes the season and bag limits for mourning doves under the category "Migratory Game Birds," the department elsewhere provides a definition of "Migratory Game Birds" which does not include mourning doves. Although the department may be guilty of crafting inconsistently worded administrative rules, that fact has no bearing on the issue of whether it is statutorily authorized to promulgate a rule establishing open and closed seasons for mourning doves.

## CONCLUSION

¶ 24. For the reasons discussed above, we reverse the appealed order and vacate the injunction contained therein.

*By the Court.*—Order reversed.

¶ 25. DYKMAN, J. (*dissenting*). In five days, the people of the State of Wisconsin will vote on a constitutional amendment which would amend article I, section 26 of the Wisconsin Constitution to provide: "The people have the right to fish, hunt, trap, and take game subject only to reasonable restrictions as prescribed by law." If this amendment passes, and most

predict that it will,[1] the issue in this case will change to the definition of "game," as that word is used in the Constitution, whether doves are game, whether there are any restrictions on dove hunting, and if so, whether the restrictions are reasonable. The question will shift from whether a dove season is permitted to whether one is prohibited. What we say in these opinions will become moot. Were I writing for a majority, I would wait five days, and if the amendment passes, ask the parties to brief the constitutional issue rather than decide this case on laws that will have become largely inapplicable. But this is a dissent, so I must address the issues presented.

¶ 26. This is not a case about doves. It is a case about how courts discover what the legislature intended when it passed a variety of laws. The birds happen to be the vehicle for an inquiry into legislative intent.

¶ 27. This is also a case about the power or authority of an administrative agency. Again, it is not a case about doves. The doves are only the focus of an inquiry into the power or authority of the Department of Natural Resources.

¶ 28. It is telling that the trial court took ten pages to examine the statutes involved in this case and conclude: "The statutes involved in this case are as clear as mud." The majority has spent thirteen pages to conclude the opposite. There are now four judges who have written twenty-six pages trying to discern legislative intent, and they have split, two-to-two. That tells me that this is a close case, and that no matter who wins it, they have barely won it by a nose (or a beak).

---

[1] This amendment to article I, section 26 of the Wisconsin Constitution passed on April 1, 2003.

¶ 29. My analysis is not extensive. I start with two long standing rules of administrative law: "[a]n administrative agency has only those powers which are expressly conferred or can be fairly implied from the statutes under which it operates." *Maple Leaf Farms, Inc. v. DNR*, 2001 WI App 170, ¶ 13, 247 Wis. 2d 96, 633 N.W.2d 720, *review denied,* 2001 WI 117, 247 Wis. 2d 1034, 635 N.W.2d 782 (No. 00–1389). And: "Any reasonable doubt as to the existence of an implied power in an agency should be resolved against the exercise of such authority." *Id.* (citation omitted).

¶ 30. The swamp surrounding the various statutes applicable to this case is murky. There is really no way to say, beyond a reasonable doubt, that the legislature has given the DNR authority to authorize a dove season. Even the majority fails to point to a statute providing in effect: "The DNR has the authority to set a dove season."

¶ 31. I have a reasonable doubt that the legislature has expressly or impliedly given the DNR that power. I am impressed that the legislature addressed the issue in 1971 by designating the mourning dove as the Wisconsin "symbol of peace," and removing the bird from the definition of "game." Common sense tells me that the legislature would not have done this intending that the "symbol of peace" would still find a place on someone's dinner table.[2] While the legislature could

[2] I am not as convinced as the majority that muskies and white-tailed deer are analogous. While they are the state fish and state wildlife animal, they were not designated as Wisconsin's "fish of peace" and "deer of peace." And they have always been the object of anglers and hunters because of their culinary and trophy status. Doves have not achieved that status. I have yet to see a stuffed dove hanging on anyone's wall.

have been more explicit, what we are looking for is legislative intent. *Reyes v. Greatway Ins. Co.,* 227 Wis. 2d 357, 365, 597 N.W.2d 687 (1999). That the legislature did not do exactly as the majority would have liked is no reason to conclude that it did the opposite.

¶ 32. The majority draws "legislative intent" from the inaction of legislative committees, and the failure of the legislature to prohibit dove hunting. The action of a committee is by definition not the action of the legislature. Even the majority does not speak of "committee intent." The supreme court rejected the notion that committee inaction indicated legislative intent in *American Motors Corp. v. DILHR,* 101 Wis. 2d 337, 349, 305 N.W.2d 62 (1981). Even the joint committee for review of administrative rules lacks the power to enact legislation or rules. WIS. STAT. § 227.19(5)(e), (f). Non-passage of a bill is even worse evidence of what the legislature intended. "[N]on-passage of a bill is not reliable evidence of legislative intent." *Lindsey v. Lindsey,* 140 Wis. 2d 684, 694 n.8, 412 N.W.2d 132 (Ct. App. 1987). By saying so, the majority does not transform committee action and legislative non-action into legislative intent. In contrast, the legislature itself told us in 1971 that doves were no longer game birds, and were designated as Wisconsin's "bird of peace." Under the majority's view, non-action by later committees and legislatures effected a repeal of these legislative acts. I do not subscribe to this explanation of how Wisconsin law is made.

¶ 33. I conclude that the legislature signaled its intent that there should not be a hunting season for doves. Perhaps not as loudly or emphatically as it could have, but enough that this intent is discernible to those who inquire. Certainly, it did not signal the opposite intent beyond any reasonable doubt. Accordingly, the

DNR exceeded its authority when it set a hunting season for the birds. The result is that its action is invalid. *Oneida County v. Converse*, 180 Wis. 2d 120, 125, 508 N.W.2d 416 (1993). Since that is not the opinion of the majority, I respectfully dissent.