MARJORIE JOHNSON ET AL. *v.* MICHAEL F.
GUARINO ET AL.

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 94380
AT NEW HAVEN

Memorandum filed December 2, 1960

*John H. Peck,* of New Haven, for the plaintiffs.

*Raymond B. Rubens,* of Bridgeport, for the defendants.

MACDONALD, J. Application has been made for a temporary injunction restraining the defendants from completing the construction of an addition to their residence to be used for a "home industry," more specifically, a hairdressing establishment.

Defendants are the owners of property located at No. 330 River Road, in Hamden, Connecticut, also known as Lot No. 20 on a certain map entitled "Sleeping Giant Manor to be owned and developed by R. Fitch and G. Hawley, Hamden, Conn., Scale 1" equals 60 feet, June 1954," on file with the Hamden town clerk's office. Said property was conveyed to the defendants by warranty deed from Robert B. Fitch and George R. Hawley, subject to certain restrictions contained in a deed from Oscar G. A. Roos to Robert B. Fitch and George R. Hawley. The restriction in question is, "That said premises shall be used, solely and wholly for residential purposes, and that no dwelling erected thereon shall be set nearer than 30 feet to any street line."

Said premises are also subject "to building lines if established, all laws, ordinances or governmental regulations including building and zoning ordinances, affecting said premises." The defendants, in accordance with the zoning regulations for the town of Hamden, Connecticut, § 34.1.3, "Customary home occupations," have made alterations to their premises to which the plaintiffs, all of whom own and reside in premises adjoining or in the immediate vicinity of defendants' said premises, all of said premises being subject to the restrictions quoted above, have made objection and against which they seek an injunction.

Defendants obtained a building permit and something in the nature of a certificate of approval for occupancy from the proper officials of the town of Hamden under § 34.1.3 of the Hamden zoning regulations, which defines customary home occupations permitted in the residential zone involved here as including "home industries and service occupations performed exclusively by a resident of the premises," subject to certain additional limitations which plaintiffs do not claim to have been violated.

The language of the covenant forbidding use for any but residential purposes is claimed by defendants to be modified, as to its meaning, by the additional language in the deeds involved subjecting all of said premises to "building and zoning ordinances," which, defendants' counsel argues, broadens the meaning of "residential purposes" in the covenant to include "customary home occupations" as defined in the zoning ordinance. It is claimed that the language of the original covenant is unclear as to its intent when taken in its entirety and that under *Katsoff* v. *Lucertini*, 141 Conn. 74, the words "residential purposes" have acquired a special meaning, rather than their ordinary meaning, and must be defined as used in the zoning ordinance. This is a most ingenious argument but it is not convincing to the court.

"Residential" is defined in Webster's New International Dictionary (2d Ed.) as "[u]sed, serving, or designed as a residence," and there is no doubt but that this is exactly what the original grantor, Oscar G. A. Roos, as well as all subsequent grantors and grantees of this land, including these plaintiffs and these defendants, understood by the word—and not that it had some broader meaning that would include anything that the zoning regulations might permit—including a beauty parlor.

These plaintiffs have a clear right to enforce the restrictions contained in all of the deeds to lots sold under a general development scheme, including that conveying defendants' lot. *Maganini* v. *Hodgson*, 138 Conn. 188, 194. And they are entitled to rely upon the assurance afforded by the restrictions applying to each lot that the entire area will retain the character which it is the office of the restrictions to secure, in the absence of conduct on their part constituting laches, waiver or abandonment. *Fidelity Title & Trust Co.* v. *Lomas & Nettleton Co.*, 125

Conn. 373, 376. Here, there was no question of laches, for plaintiffs' attorney notified defendants as soon as the building permit was obtained, and before construction was commenced, that there would be objections. Accordingly, though hardship is involved because of the defendants' investment in the new addition for the uses objected to, it is a hardship of their own making—and one upon which they took a calculated risk. As stated by the court in *Armstrong* v. *Leverone,* 105 Conn. 464, quoting *Stewart* v. *Finkelstone,* 206 Mass. 28, 38, " 'The defendant with full knowledge of the restrictions "deliberately attempted" to override them. . . . He took his chances as to the effect of his conduct with eyes open to the results which might ensue. . . . Entrenchment behind considerable expenditures of money cannot shield premeditated efforts to evade or circumvent legal obligations from the salutary remedies of equity.' " Though the conduct of the defendants here might not be a "deliberate attempt" to override the restrictions, it is difficult to believe that they did not realize that the restrictive covenant and the zoning restrictions were two entirely separate and unrelated limitations on their use of their property. See *Maloney* v. *Veggo F. Larsen Co.,* 11 Conn. Sup. 166.

It is obvious from the photographs introduced by plaintiffs that this is a high-class residential development in which plaintiffs have invested considerable sums in reliance upon their ability to preserve its strictly residential nature. It is also obvious from exhibits that the proposed use alters the anticipated nature of the neighborhood. An addition of the type shown, however unobjectionable in its appearance as such, could, under defendants' interpretation of the law, be used for many types of "home industries and service occupations" which even the defendants themselves would probably ob-

ject to as changing the entire residential complexion of the neighborhood.

The plaintiffs are entitled to the protection of their properties against impairment of their values and the irreparable injury that would follow therefrom.

A temporary injunction may issue restraining the defendants from continuing the construction involved for use for home industry and from using said premises for the purposes of home industry.