**J. Bradley ASP, d.b.a. Pride of Craftsman, Respondent,**

v.

**James R. O'BRIEN, Appellant,**

**Southside Lumber Company et al., Defendants.**

**No. 48145.**

Supreme Court of Minnesota.

March 23, 1979.

John R. Kotts, Minneapolis, for appellant.

Larson Law Firm, Robert P. Larson, Wayzata, for respondent.

WAHL, Justice.

This appeal involves a suit to foreclose a mechanic's lien and a counterclaim for defective and undelivered merchandise. The trial court held that plaintiff was entitled to a specific lien in the amount of $4,359.46 plus $377.47 interest, $190.00 disbursements, and $2,400.00 attorney's fees, less $500.00 for the diminution in value of the cabinets due to defects or flaws in the materials or craftsmanship.

The issues are: (1) whether the evidence sustains the trial court's finding that the contract was substantially performed; (2) whether the trial court erred in granting damages for diminution in value; and (3) whether the trial court erred in awarding plaintiff attorney's fees of $2,400.00. We affirm in part, reverse in part and remand for modification of the amount of attorney's fees.

Defendant, a builder and licensed realtor specializing in lakeshore residences, decided to build himself a new residence on Lake Minnetonka in 1974. Plaintiff, who started his own cabinetry shop in 1971 shortly after graduating from the Minneapolis Vocational-Technical Institute, contacted defendant about doing the cabinetry work. The parties met several times between June and October to discuss the plans. At the first and second meetings in defendant's residence in Edina, defendant suggested they work together in designing the cabinets and expressed a preference for the Mediterranean decor he had designed for his Edina residence. The parties met a third time at the site of the new home. Plaintiff produced three proposals by September 21st, but defendant never signed any of them.

Around October 1st, the parties orally agreed on a price of $3,760.00 for all of the then-planned cabinetry. Because defendant did not sign any of plaintiff's proposals and because the plans were only roughed out and not precisely drawn to scale, the exact nature and extent of the cabinetry included in the contract is unclear. Both parties apparently acted in good faith throughout their dealings, and both thought, at least in the early stages of production, that they had reached a complete agreement.

Defendant claimed the cabinets were to be delivered by October 18th. Plaintiff, however, believed there was no complete agreement on a delivery date and began to

deliver the cabinets around October 20th. Delays ensued when defendant sent several items back, and plaintiff reworked them. Most of the cabinets were delivered on November 27, 1974. Defendant inspected the cabinets and informed plaintiff that they were not satisfactory because they were the wrong design. After an argument, plaintiff refused to continue working with defendant and did not visit the work site again. Defendant made no effort to return the merchandise. Despite his belief that he would eventually have to replace the cabinets, he finished and mounted them.

In late February 1975, plaintiff sent defendant a bill for $4,359.76—the contract price plus $599.46 for items plaintiff believed were in addition to the contract. Plaintiff also wrote to defendant stating he needed full payment by March 15th or he would foreclose the mechanic's lien he had already filed against the property. Defendant agreed that $3,760.00 was the contract price, but refused to pay because he claimed plaintiff had not completed the agreement. He sent plaintiff a list of missing merchandise and defects and submitted an estimate of $4,255.00 for consequential damages.

Plaintiff sued to foreclose the mechanic's lien. The trial court found that $4,359.46 was the reasonable value of the work plaintiff provided; that the merchandise had defects in material or craftsmanship which diminished its value by $500.00; and that plaintiff was entitled to interest of $377.47, disbursements of $190.00, and $2,400.00 for attorney's fees.

We consider first the sufficiency of the evidence to sustain the trial court's finding that the contract was substantially performed.

1. Viewing the evidence in the light most favorable to the prevailing party, it is apparent that the parties never reduced their plans or their agreement to a final, detailed set of specifications. Defendant continued to make modifications during the initial phase of construction, and plaintiff reworked certain cabinets that did not meet with defendant's approval. Plaintiff only refused to continue working after defend-

ant informed him that the bulk of the cabinetry was unacceptable because the design was wrong. Plaintiff's testimony indicates that he made a good faith effort to produce cabinets to meet the specifications as he understood them. Though defendant complained, he accepted, finished, and mounted the cabinets. It appears that the only undisputed item of the contract was the price.

The trial judge examined numerous physical exhibits of the cabinets and the plans used by the parties. He heard the testimony of cabinetry experts, as well as that of the parties. When the trial court hears a case without a jury, conflicts of evidence are to be resolved by the trial judge. The evidence in this case reasonably supports the trial court's finding of substantial compliance. We will not reverse those findings unless they are clearly erroneous. *In re Estate of Balafas*, 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972).

2. Defendant next contends that the trial court erred in using diminution of value as the measure of damages in this case. The trial court reduced plaintiff's recovery by $500.00 for diminution in value due to defects or flaws in the material or craftsmanship of the cabinets. The usual measure of damages for breach of a construction contract is the cost of reconstruction. If reconstruction is not possible without unreasonable economic waste, the proper measure of damages is the difference in value between what was contracted for and what was actually built. *Northern Petrochemical Co. v. Thorsen & Thorshov, Inc.*, 297 Minn. 118, 124, 211 N.W.2d 159, 165 (1973).

In the present case the cost of reconstructing the cabinets would greatly exceed the original cost of building them. The cabinets were functional as built. The defects were essentially cosmetic rather than structural. Thus, the trial court did not err in using diminution in value as the measure of damages.

The testimony concerning the diminution in value was not extensive. Defendant testified that the defective cabinets re-

duced the value of his home by $30,000.00. However, the issue before the court was the diminution in value of the cabinets, not the home. Plaintiff claimed there was no diminution in value. One cabinet maker testified that the cost of constructing cabinets as found in defendant's new residence was $7,019.30. This figure exceeded the amount the trial court found to be the reasonable value of the cabinets built by plaintiff. The trial court need not adopt the valuation testimony of any one witness. As long as the trial court's finding of valuation is within the limits described by the evidence, we will not disturb it. *Klingelhutz v. Grover*, 306 Minn. 271, 273, 236 N.W.2d 610, 611 (1975).

3. The most troublesome issue is whether the trial court erred in its award of attorney's fees. The trial court awarded plaintiff $2,400 for attorney's fees after plaintiff's attorney testified to the amount of time he spent preparing and presenting the case at the fee he charged per hour. The trial court has discretion to award reasonable attorney's fees as part of mechanic's lien foreclosure costs. *Obraske v. Woody*, 294 Minn. 105, 109, 199 N.W.2d 429, 432 (1972). Such awards, however, should be made with caution so that property owners are not discouraged from challenging defective workmanship on the part of lien holders by excessive awards of attorney's fees. Although we do not believe that the fees awarded were excessive, either in terms of the number of hours billed or the amount charged per hour, we are not inclined to allow the award of the full amount, particularly where the amount of the lien recovered is small in comparison to the attorney's fees assessed. This is especially true in a case such as this where the property owner was successful in partially limiting the amount of recovery. We therefore reduce the award of attorney's fees to $1,000.

Affirmed in part, reversed in part and remanded for modification of judgment.

OTIS, J., took no part in the consideration or decision of this case.