**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1472**

Ryan Contracting Company,
Appellant,

vs.

O'Neill & Murphy, LLP, et al.,
Respondents.

**Filed July 27, 2015**
**Affirmed in part, reversed in part, and remanded**
**Smith, Judge**

Hennepin County District Court
File No. 27-CV-13-14570

Paul A. Sortland, Sortland Law Office, PLLC, Minneapolis, Minnesota (for appellant)

Kay Nord Hunt, Phillip A. Cole, Lommen Abdo, P.A., Minneapolis, Minnesota (for respondents)

Considered and decided by Worke, Presiding Judge; Hudson, Judge; and Smith, Judge.

**S Y L L A B U S**

When determining whether a mechanic's lien is exempt under Minn. Stat. § 514.011, subd. 4c (2014) from the pre-lien notice requirement in Minn. Stat. § 514.011, subd. 1 (2014), the focus is whether the intended improvement to real property is "wholly or partially nonresidential in use" and not the existing use at the time the improvement is commenced.

**O P I N I O N**

**SMITH**, Judge

We reverse and remand the district court's grant of summary judgment to respondent because appellant raised genuine issues of material fact regarding whether its 2007 lien-foreclosure action would have been successful but-for the negligence of its attorney. In the interests of judicial economy, we affirm the district court's analysis in its alternative holding, challenged in respondents' related appeal, that appellant raised genuine issues of material fact precluding summary judgment regarding whether its 2010 settlement agreement precluded its malpractice suit.

## FACTS

In 2003 and 2004, appellant Ryan Contracting Company contracted with Farr Development Corporation and Darrel A. Farr Development Corporation (Farr) to perform utility and street improvements for the first two phases of a mixed-use development plan approved by the City of Otsego. The contracts for the work did not contain the pre-lien notice set out in Minn. Stat. § 514.011, subd. 1 (2014). The work was to be performed on previously unimproved or "raw" land.

In July 2006, Ryan terminated the contracts due to Farr's nonpayment of amounts owed. Farr sued Ryan, alleging breach-of-contract and slander of title. Ryan retained Meagher & Geer, P.L.L.P. to record mechanic's liens for the work it had performed, valued at $356,073.23. Ryan had not provided a pre-lien notice before retaining Meagher & Geer. Meagher & Geer advised Ryan that no pre-lien notice was required because "Ryan's work arguably fell within the pre-lien notice exception for multiple

dwellings . . . allowing Ryan to record its liens within 120 days of furnishing its last item of work or materials." Based on Ryan's reported last day of work on the project, Meagher & Geer believed that it had "a little over two weeks to record Ryan's mechanic['s] liens." Based on its conclusion that "Ryan was unable to apportion the value of the improvements to any particular lot or outlot, given the nature of the street and utility improvements" it had made, and the fact that Farr no longer owned all the lots, Meagher & Geer "adopted a conservative approach and recorded a blanket lien in the amount of $356,073.23 on the parcels that Farr still owned, and also blanket liens in the same amount . . . on each parcel that had been sold." Meagher & Geer amended the lien statements on two occasions, once to separate the amounts of work performed under phase 1 and phase 2 of the project, and again to amend the last day of work performed. In April 2007, Meagher & Geer commenced a lien-foreclosure action on Ryan's behalf in district court.

The district court consolidated Farr's and Ryan's actions and considered their competing motions for summary judgment. Quoting Minn. Stat. § 514.03, subd. 1(b) (2006), the district court ruled that, "with regard to properties not owned by Farr, Ryan's lien is limited to the 'reasonable value of the work done, and of the skill, material, and machinery furnished.'" Since each lien claimed the entire amount that Farr purportedly owed Ryan, the district court ruled that the liens on property not owned by Farr violated Minn. Stat. § 514.74 (2006) because, "to the extent Ryan knowingly claimed liens in the amount of the entire contract price against lots not owned by Farr . . . Ryan knowingly demanded more than [was] justly due." Accordingly, it granted summary judgment to

3

Farr with regard to the liens on parcels no longer owned by Farr. It denied, however, Farr's motion for summary judgment regarding lots still owned by Farr.

The district court acknowledged Ryan's argument that it could not apportion the value of its work to each lot. It opined, however, that "Ryan could have filed one lien for the entire amount claimed and listed all properties which would share a burden of the claim." It concluded that Minn. Stat. § 514.09 (2006) "provided Ryan a means of filing a timely lien statement while reserving decisions about apportionment for a later time."

In December 2010, Ryan settled its remaining claims against Farr for $280,000. In the settlement agreement, Ryan released its liens and Farr released all its claims against Ryan. But Ryan reserved its claims against Meagher & Geer.

In March 2012, Ryan, represented by respondents Patrick H. O'Neill and O'Neill & Murphy, LLP (collectively O'Neill), commenced a malpractice action against Meagher & Geer. O'Neill failed to timely file an expert-disclosure affidavit as required by Minn. Stat. § 544.42, subds. 2(2), 4 (2010). Accordingly, the district court dismissed Ryan's malpractice claim against Meagher & Geer with prejudice.

In July 2013, Ryan commenced a malpractice action against O'Neill. In July 2014, the district court granted O'Neill's motion for summary judgment. It ruled that Ryan's "failure to file [pre-lien] notice as required by Minn. Stat. § 514.011 rendered all its liens . . . void and obviate[d] any error by [O'Neill] in its attempt to assert the liens after the work was done." It reasoned that the exception to the pre-lien requirement in Minn. Stat. § 514.011, subd. 4c did not apply because the land that Ryan worked to improve was "undeveloped/raw land not in use" and was therefore not "nonresidential in

4

use" as the exception requires. Since Ryan's failure to give pre-lien notice preceded any failure by Meagher & Geer, the district court explained, Ryan could not have prevailed in a malpractice action against Meagher & Geer even if O'Neill had timely filed the expert-disclosure affidavit.

The district court also based its grant of summary judgment on the alternative ground that Meagher & Geer was not at fault for Ryan's inability to record liens against the non-Farr-owned lots on the property. It determined that Ryan's inability to apportion the value of the improvements was caused by Ryan's choice of when to file the liens, rather than by Meagher & Geer's methods. In addition, it ruled that a blanket lien was not possible because Ryan had failed to pursue its liens until after Farr had sold some of the lots. As such, the district court ruled that any damages Ryan suffered from its inability to record liens against the non-Farr-owned properties were caused by Ryan, not Meagher & Geer.

Although it granted summary judgment to O'Neill for lack of causation, the district court also stated that, if it had not done so, it would have ruled that Ryan's decision to settle with Farr did not preclude Ryan from pursuing a malpractice action. The district court opined that "the reasonableness of the settlement would be a jury issue at trial if [Ryan] prevailed on the lien issues as a matter of law" because "the amount of damages suffered by [Ryan] as a result of [O'Neill's] negligence, as well as the reasonableness of the settlement [with] Farr, are questions to be determined by the jury." It also predicted that, "[i]f [Ryan] had prevailed in the Farr litigation, there would, in all likelihood, have been an award of reasonable costs and attorneys' fees" and "if [Ryan's]

malpractice case [against] Meagher [&] Geer had gone forward and [Ryan] prevailed, there is a probability that costs and attorneys' fees would have been awarded, at some level."

Ryan appealed the district court's grant of summary judgment to O'Neill and, in a properly noticed related appeal, O'Neill appealed the district court's dicta stating that Ryan's settlement with Farr did not preclude its pursuit of a malpractice action.

## ISSUES

I.    Did the district court err by granting summary judgment to O'Neill?

II.   Did the district court err by stating that Ryan's settlement agreement with Farr did not preclude it from suing for malpractice?

## ANALYSIS

## I.

Ryan challenges the district court's grant of summary judgment to O'Neill, arguing that it erred by ruling that Ryan's own failure to give pre-lien notice obviated any harm from O'Neill's negligence. We review a district court's grant of summary judgment de novo. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). "In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Id.*

To survive summary judgment in a legal-malpractice case, a plaintiff must show that, "but for defendant's conduct, the plaintiff would have been successful in the prosecution or defense of the action." *Jerry's Enters., Inc. v. Larkin, Hoffman, Daly &*

6

*Lindgren, Ltd.*, 711 N.W.2d 811, 816 (Minn. 2006) (quotation omitted). This requires that we assess the merits of the case underlying a malpractice action to determine if there was a "*win[n]able* case-within-a-case." *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 409 (Minn. 1994) (quotation omitted). Here, the merits of Ryan's malpractice action against O'Neill depend on the merits of its malpractice action against Meagher & Geer, which in turn depend on the potential enforceability of its liens against the non-Farr-owned lots in the development project.

The parties implicitly agree that O'Neill's conduct was negligent. They dispute, however, whether O'Neill's negligence caused damage to Ryan because they disagree about whether Ryan's liens on the non-Farr-owned properties were void as a matter of law before Meagher & Geer got involved in the matter and whether Meagher & Geer's attempts to file the liens represented the best course of action in light of the timing of Ryan's direction to file the liens. We must therefore consider not merely a "case-within-a-case," but a "case-within-a-case-within-a-case," determining if the district court erred in its analysis of whether pre-lien notice was required by Minn. Stat. § 514.011 (2014) and, alternatively, whether Ryan's damages from its inability to record liens against the non-Farr-owned properties were caused by Meagher & Geer's errors rather than Ryan's delays in pursuing the liens.

**A. Application of Minn. Stat. § 514.011, subd. 4c**

Ryan argues that the district court erroneously concluded that Ryan was required to give pre-lien notice because the exception in Minn. Stat. § 514.011, subd. 4c did not apply.

7

> Every person who enters into a contract with the owner for the improvement of real property and who has contracted or will contract with any subcontractors or material suppliers to provide labor, skill or materials for the improvement shall include in any written contract with the owner the notice required in this subdivision and shall provide the owner with a copy of the written contract.

Minn. Stat. § 514.011, subd. 1. "A person who fails to provide the notice shall not have the lien and remedy provided by this chapter." *Id.* But "[t]he notice required by this section shall not be required to be given in connection with an improvement to real property which is not in agricultural use and which is wholly or partially nonresidential in use if the work or improvement" meets one of three conditions. *Id.*, subd. 4c. The district court did not find (and O'Neill does not claim) that the development project failed to meet any of the three specified conditions. Rather, the district court found that the property was not real property wholly or partially "nonresidential in use" because it was raw land not currently being used for any purpose. Ryan argues that the intended use of the property, as established by the plat for the project, included commercial uses and that the district court erred by focusing exclusively on the use of the land prior to the improvement. Resolution of this appeal therefore turns on the meaning of "nonresidential in use" in Minn. Stat. § 514.011, subd. 4c.

"Interpretation of a statute presents a question of law, which we review de novo." *Swenson v. Nickaboine*, 793 N.W.2d 738, 741 (Minn. 2011).

> Our goal when interpreting statutory provisions is to ascertain and effectuate the intention of the legislature. If the meaning of a statute is unambiguous, we interpret the statute's text according to its plain language. If a statute is ambiguous, we

8

> apply other canons of construction to discern the legislature's intent.

*Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn. 2010) (quotation and citations omitted).

We must first determine whether Minn. Stat. § 514.011, subd. 4c is ambiguous. "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) (quotation omitted). The district court ruled that "nonresidential in use" referred to the use of the property before the planned improvement, and Ryan contends that the "use" should be determined by the anticipated improvement. In essence, the parties differ about the item referred to that must be "nonresidential in use." The district court's ruling assumes that it is the *real property* that must be nonresidential in use, and Ryan's argument assumes that it is the *improvement* that must be nonresidential in use. Because both interpretations follow directly from the text of subdivision 4c and differ only regarding where they place emphasis, we conclude that both interpretations are reasonable and that subdivision 4c is ambiguous.

When interpreting an ambiguous statute, we seek to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). We read the statute as a whole and "interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Schroedl*, 616 N.W.2d at 277. We seek to give effect to all of the statute's provisions, and avoid interpretations that render any "word, phrase, or sentence . . . superfluous, void, or insignificant." *Id.* (quotation omitted). We also

9

"interpret the statute . . . in a sensible manner that avoids unreasonable, unjust, or absurd results." *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 565 N.W.2d 16, 20 (Minn. 1997). "When the language of a mechanic's lien statute is unclear or ambiguous, we have liberally construed the statute in favor of the mechanic's lien claimant." *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 759 (Minn. 2010).

Under these principles, Ryan has the better interpretation of the statute. Minn. Stat. § 514.011, subd. 4c(a) provides that one scenario in which pre-lien notice is not required is when the improvement "is to *provide or add* more than 5,000 usable square feet of floor space." (Emphasis added.) The district court's analysis would require that only improvements that add to an existing nonresidential use could qualify for the exception in subdivision 4c(a). This would render the word "provide" superfluous. Reading subdivision 4c(a) to give meaning to the word "provide," Ryan's improvements took place in the context of an improvement plan that would provide more than 5,000 square feet of floor space. Accordingly, Ryan was exempt from the pre-lien notice requirement.

This interpretation of the statute also fits how subdivision 4c has implicitly been interpreted in our caselaw. In *Christle v. Marberg*, we held that a "property was wholly residential in nature" for purposes of Minn. Stat. § 514.011, subd. 4c where the property was "unimproved" but platted for solely residential development. *See* 421 N.W.2d 748, 749-51 (Minn. App. 1988). We noted that a map showing that "the property [was] for residential development" was the key piece of evidence. *Id.* at 751. Thus, it was the

10

planned-for use of the property that determined the property's character for purposes of Minn. Stat. § 514.011, subd. 4c, not its existing use or nonuse.

Similarly, in *C. Kowalski, Inc. v. Davis,* we held that "[p]re-lien notice is unnecessary where the area of an improvement exceeds 5,000 square feet of usable floor space and the improvement is *intended* wholly or partially to be used for non-residential purposes." 472 N.W.2d 872, 873 (Minn. App. 1991) (emphasis added), *review denied* (Minn. Sept. 13, 1991). We concluded that the contractor was exempt from the pre-lien notice requirement because the record indicated that operation of a business was the "planned" use of the improvement and "[t]he fact that the use of the room changed at a later date has little relevance to the issue of whether pre-lien notice should have been given." *Id.* at 877. That a planned-for commercial use of a property never materializes does not mean that pre-lien notice is then required.

O'Neill argues that the district court in the original lien-foreclosure action made a fact finding that the property was residential. This argument is unavailing. The portion of the district court's order that O'Neill quotes is not a fact finding, but rather a prefatory reference introducing the development project at issue. Although a district court's fact findings may be implicit, *see Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009), the record does not indicate that the district court in the original lien-foreclosure action considered arguments contesting whether the property was residential or mixed-use. The district court did not reference Minn. Stat. § 514.011 at all. Rather, it focused on the validity of the liens under Minn. Stat. §§ 514.74, .09, and .08 (2006). Its passing reference to the development as a "residential property development" cannot therefore be

11

fairly interpreted as a factual finding resolving whether Minn. Stat. § 514.011, subd. 4c applies. Additionally, that the property was intended for mixed-use development is evident from the city's approval of the development plan, the plat documents, and the accompanying maps. We therefore conclude that the district court erred when it determined that Ryan's liens would have been void for failure to provide pre-lien notice.

**B. Cause of Ryan's Inability to Record Liens on Non-Farr-Owned Properties**

Ryan also challenges the district court's alternative basis for granting summary judgment, arguing that the district court misstated the law when it concluded that Meagher & Geer was not at fault for failing to file a blanket lien against the properties because such a blanket lien was not available as a matter of law. A party "who has contributed to . . . improvements situated upon . . . adjoining lots, under or pursuant to the purposes of one general contract with the owner, may file one statement for the entire claim, embracing the whole area so improved; or, if so electing, . . . may apportion the demand between the several improvements." Minn. Stat. § 514.09 (2014). In accord with the district court's analysis, O'Neill argues that neither option was available at the time Ryan sought to file the liens and that Meagher & Geer's efforts therefore reflected the best available methods for attempting to file them. Ryan contends that Meagher & Geer misanalysed whether a blanket lien was available and, alternatively, whether the improvements could be apportioned, thereby causing Ryan's potential liens on the non-Farr-owned properties to be lost. We must therefore address whether either alternative was available to Meagher & Geer on Ryan's behalf.

12

### 1. Blanket Lien

"[W]hen a lien claimant elects to file a blanket lien pursuant to section 514.09, one lien is created which encumbers the whole area improved." *Premier Bank*, 785 N.W.2d at 762-63. O'Neill argues that this option was not available to Meagher & Geer because "Ryan performed the work under two separate contracts and there was an issue as to whether the lots were all adjoining." But the district court in the original lien-foreclosure matter found that "there are material issues of fact regarding whether the contracts constitute two separate contracts requiring separate liens, as opposed to one continuing contract." Accordingly, the district court's grant of summary judgment to O'Neill was erroneous to the degree that it rests on the contention that Meagher & Geer could not have filed a blanket lien because Ryan had two contracts with Farr instead of one.

O'Neill's doubts about whether the lots were adjoining are similarly insufficient to support summary judgment.

> All liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement . . . . As against a bona fide purchaser, mortgagee, or encumberer without actual or record notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground . . . .

Minn. Stat. § 514.05, subd. 1 (2014). Under this subdivision, when a lien is filed after work is done, it relates back to the beginning of the improvement work notwithstanding an intervening recording of other property interests. *See Big Lake Lumber, Inc. v. Sec. Prop. Invs., Inc.*, 836 N.W.2d 359, 363 (Minn. 2013) (stating that a lien relates back to the beginning of the improvement, giving it priority over an intervening mortgage

13

recording). Similarly, whether improvements benefit contiguous tracts of land is determined at the time a lien claimant begins work, not at the time the liens are filed. *See LaValle v. Bayless*, 257 N.W.2d 283, 285 (Minn. 1977) ("The crucial time for determining contiguity . . . was at the time plaintiff began construction.").

O'Neill contends, however, that *LaValle* requires the opposite conclusion when read in concert with Minn. Stat. § 514.03, subd. 1(b) (2014). Subdivision 1(b) of section 514.03 limits lien amounts against noncontracting owners to "the reasonable value of the work done, and of the skill, material, and machinery furnished." Since Ryan could not determine that value with regard to any particular parcel, O'Neill contends, a blanket lien was not available. But the supreme court held in *Premier Bank* that the apportioned value of a blanket lien was the "pro rata *amount of the lien*." 785 N.W.2d at 763 (emphasis added). O'Neill states no reason that the prorata process could not be applied to a lien amount calculated based on "the reasonable value of the work done, and of the skill, material, and machinery furnished, *see* Minn. Stat. § 514.03, subd. 1(b), just as the supreme court in *Premier Bank* applied it to a lien amount calculated based on the value of the contract, *see* 785 N.W.2d at 762-63.

The fact that Farr no longer owned some of the lots at the time that Ryan sought to file its liens is therefore irrelevant; the issue is whether the lots were sold before or after "the actual and visible beginning of the improvement on the ground." *See* Minn. Stat. § 514.05, subd. 1. Neither the district court's order in the original lien-foreclosure action nor the district court's order in the malpractice action addresses this issue. The dates of sale of the lots by Farr and the question of "[w]hether the work done also constituted the

14

actual and visible beginning of the improvement" at that time are questions of fact, *see Kloster-Madsen, Inc. v. Tafi's, Inc.*, 303 Minn. 59, 64, 226 N.W.2d 603, 607 (1975), so a genuine issue of material fact exists as to whether a blanket lien was unavailable to Meagher & Geer as a matter of law.

### 2. Apportionment

O'Neill also contends that it "is undisputed that Ryan was not able to apportion the value of the improvements to any particular lot." O'Neill cites the district court's finding in the lien-foreclosure matter that Ryan had conceded the impossibility of apportionment and the testimony of a non-Meagher & Geer attorney opining that the "apportionment of that lien was not a possibility." But O'Neill's argument highlights the factual dispute that precludes summary judgment. The district court in the lien-foreclosure matter noted Ryan's concession that apportionment was impossible in the context of discussing the refusal by Meagher & Geer attorneys of the district court's invitation to amend the liens. It did not find that apportionment was impossible; rather, it found that Ryan's attorneys had represented it as impossible. As such, it does not act as an admission to bar Ryan's malpractice claim.

O'Neill also contends that apportionment was impossible as a matter of law. In accordance with the district court in the lien-foreclosure matter, O'Neill argues that Minn. Stat. § 514.03, subd. 1(b) limits any amount apportioned to a noncontracting owner in a lien claim to the "reasonable value of the work done," and implies that it was impossible for Ryan to determine that value with regard to each non-Farr-owned property. As discussed above, such a calculation is possible. We therefore conclude that

15

a genuine issue of material fact exists regarding whether an apportionment method was available. Accordingly, we reverse the district court's grant of summary judgment to O'Neill and remand for further proceedings.

## II.

After granting summary judgment to O'Neill, the district court went on to alternatively address whether Ryan would be entitled to a jury trial on damages if it had not lost the summary-judgment motion. We address this holding in the interests of judicial economy because it is likely to arise on remand. *See In re Estate of Vittorio*, 546 N.W.2d 751, 756 (Minn. App. 1996) ("Because this issue will arise on remand, we address it here in the interest of judicial economy.").

O'Neill argues that Ryan obtained the full value of all of its claims related to its contracts with Farr, discounted by the inherent risks of litigation, when it settled for $280,000, that its attempt to obtain more by pursuing a malpractice action is therefore barred, and that O'Neill is entitled to summary judgment on that ground. The district court held, however, that the question of whether Ryan received the maximum reasonable value available to it in the settlement agreement was an issue of fact that precluded summary judgment for O'Neill.

The district court's analysis is correct. Although O'Neill cites the testimony of Ryan's attorney during the settlement period opining that Ryan obtained everything it could reasonably expect to recover on its claims against Farr, that opinion is not dispositive. A fact-finder could conclude that Ryan's settlement and its failure to recover the entire value of its claim were caused by Meagher & Geer's negligence. As the

16

district court noted, a fact-finder could also award Ryan its costs and attorney's fees, and these were not included in the settlement agreement.

O'Neill cites caselaw expressing disapproval towards "settle-and-sue" strategies where a client enters into a settlement agreement and then brings a malpractice action to attempt to recover more. *See, e.g.*, *Rouse*, 520 N.W.2d at 410 n.6; *Glenna v. Sullivan*, 310 Minn. 162, 170 n.3, 245 N.W.2d 869, 873 n.3 (1976). The supreme court's disapproving comments, however, relate to situations where a client settles a claim under the advice of an attorney and then sues that same attorney, alleging that, but for the attorney's advice to settle, the client could have received more. *See Rouse*, 520 N.W.2d at 410 n.6 (limiting the supreme court's disapproval to situations where the client "thinks the [settlement] might have been more favorable had the attorney advised him differently"); *Glenna*, 310 Minn. at 170 n.3, 245 N.W.2d at 873 n.3 (disavowing the notion of "leaving to a jury the opportunity to second-guess the attorney on questions of professional judgment and trial tactics which arise every day in every lawsuit" (quotation omitted)). Ryan alleges that the settlement value was undermined by a *prior* attorney's negligent acts, so this case easily distinguishable.

O'Neill contends, however, that the real factor that undermined Ryan's settlement value was the risk posed by intervening court decisions that called its arguments into question. But the cases O'Neill cites do not undermine Ryan's arguments. In *S.M. Hentges & Sons, Inc. v. Mensing*, the supreme court held that the exception to pre-lien notice in Minn. Stat. § 514.011, subd. 4b (2008) applied only to multi-unit apartment buildings, condominiums, and townhomes, not to multiple housing units in the form of

aggregated single-family dwellings in a development. 777 N.W.2d 228, 231-32 (Minn. 2010). As explained previously, Ryan's claim to an exemption from pre-lien notice is grounded in subdivision 4c, not 4b. Although Ryan might have believed that subdivision 4b related to its claim at the time of the settlement, any risk to its claim posed by *Hentges* was obviated by the fact that the development plat also included plans for townhomes. Thus, the notion that *Hentges* posed a risk affecting the settlement value of Ryan's claim is at least sufficiently doubtful to raise a fact question that precludes summary judgment.

O'Neill's argument that *Premier Bank* posed a risk to Ryan is correct, but only in a way that bolsters Ryan's argument rather than undermines it. In *Premier Bank*, the supreme court held that a blanket lien applying to an entire improvement results in a pro rata share applied to each lot in the area covered. 785 N.W.2d at 762-63. Thus, *Premier Bank* tends to support Ryan's argument that the loss of the liens on the non-Farr-owned lots that Ryan attributes to Meagher & Geer's negligence undermined the value of its claim, resulting in a settlement amount less than the full value of its claim. O'Neill's allegation that Ryan's settlement attorney negotiated a settlement amount greater than what remained under *Premier Bank* may reflect positively on that attorney, but it only mitigates the loss that Ryan alleges it suffered due to Meagher & Geer's purported negligence. Because the amount Ryan obtained in the settlement did not reflect the full value of what it claims it was due but for Meagher & Geer's negligence, we conclude that summary judgment for O'Neill on the grounds O'Neill asserts in its related appeal was not appropriate, and we affirm the district court's dicta explaining as such.

## DECISION

Genuine issues of material fact exist as to whether, but for Meagher & Geer's negligence, Ryan would have been able to enforce mechanic's liens against the non-Farr-owned properties in the development. We therefore reverse the district court's grant of summary judgment to O'Neill and remand for further proceedings consistent with this opinion.

Genuine issues of material fact also exist as to whether, but for O'Neill's negligence, Ryan would have been able to recover more than the $280,000 it received from its settlement with Farr. We therefore affirm the district court's dicta in the interests of judicial economy.

**Affirmed in part, reversed in part, and remanded.**